UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:22-cv-145

| | |
|---|---|
| **Donald Stringfellow, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff**<br><br>v.<br><br>**United States of America,**<br><br>**Defendant** | **CLASS ACTION COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Donald Stringfellow ("Plaintiff"), by and through counsel, on behalf of himself and all others similarly situated (collectively "Plaintiffs"), hereby set forth this class action against Defendant United States of America ("Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1. For decades the water at Marine Corps Base Camp Lejeune was contaminated with toxic chemicals known to cause cancer and a host of other chronic—often deadly—diseases and conditions. Hundreds of thousands of servicemembers and civilians drank, bathed in, cooked with, and swam in that water. Nevertheless, in violation of governing orders and basic duties of decency, federal government officials failed to ensure that toxic chemicals from industrial facilities, fuel tanks, and dry-cleaning operations did not seep into the water used by the men and women who were willing to lay their lives on the line for our nation and their families. Indeed, for decades the federal government did not even bother to test the water.

2. Thousands of servicemembers and civilians who resided at Camp Lejeune between the 1950s and the 1980s have contracted serious diseases and chronic conditions as a result of their exposure to the contaminated water, including but not limited to: kidney cancer; non-Hodgkin's lymphoma; multiple myeloma; leukemia; liver cancer; bladder cancer;

1

chemically-induced parkinsonism; end-stage renal disease; systematic sclerosis/scleroderma; and cardiac defects. Camp Lejeune's toxic water has also been linked to widespread birth defects and high rates of stillborn babies.

3. At all times relevant, Plaintiffs were unable to mitigate their individual damages as the result of the Defendant's failure and refusal to provide its knowledge and information as it concerns the health consequences of exposure to the contaminants to which the Plaintiffs were exposed.

4. When the truth about Camp Lejeune's water finally emerged in the late 2000s, the United States faced thousands of claims for compensation on behalf of the people injured or killed by its conduct. But instead of compensating servicemembers and others for their injuries, the United States steadfastly refused to pay their claims. When lawsuits were filed under the Federal Tort Claims Act ("FTCA") in federal court, the United States escaped liability by invoking North Carolina's ten-year statute of repose—which operated to bar all claims even though the federal government's misconduct had not come to light until well after the statutory period had run.

5. The United States has now finally decided to fulfill its obligation to servicemembers, their families, and civilians who resided and worked at the base during the period in which the water was contaminated. Section 804(b) of the "Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive Toxics (PACT) Act," also known as the "Camp Lejeune Justice Act of 2022" (hereinafter "the Act") establishes a simple cause of action permitting individuals who were harmed by the contaminated water at Camp Lejeune over the relevant period of time to obtain relief in this Court. Specifically, "[a]n individual . . . who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune."

*Id.* To meet the burden of proof, a plaintiff need only "produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is . . . sufficient to conclude that a causal relationship is at least as likely as not." § 804(c)(2) of the Act.

## PARTIES

6. Plaintiff is an adult resident of Virginia. Between August 1, 1953 and December 31, 1987, Plaintiff resided, worked or was otherwise exposed for not less than thirty (30) days to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States.

7. Defendant United States of America is the party responsible for damages caused by its military service components, including responsibility for the United States Navy and United States Marine Corps and related facilities. Defendant has waived its sovereign immunity from suit under §804(f) of the Act.

## JURISDICTION AND VENUE

8. The United States District Court for the Eastern District of North Carolina has exclusive jurisdiction over any action filed under §804(b) of the Act and is the exclusive venue for this action. *See* § 804(d) of the Act. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

9. Plaintiff, in addition to the putative class members, have each filed a claim with United States pursuant to 28 U.S.C. § 2675, and prior to filing this lawsuit, each Claimant's claim was denied and more than six (6) months has elapsed since the date each Claimant's claim was filed.

## FACTUAL ALLEGATIONSBACKGROUND ON CAMP LEJEUNE CONTAMINATION

10. Established in 1941, Camp Lejeune has long served as a major training facility for the United States Marine Corps. At all times relevant hereto, Defendant owned, controlled and/or operated the military base, to include its water supply and distribution system, located at and known as Camp Lejeune, North Carolina.

11. Beginning in the mid-1950s, toxic chemicals seeped into the soil and groundwater of Camp Lejeune and ultimately contaminated many of the wells used to supply the water-treatment plants that distributed water throughout Camp Lejeune.

12. In 2008, over a half-century after the water at Camp Lejeune first became contaminated, the United States Navy began notifying affected individuals about "past water quality issues" at Camp Lejeune. In light of this disclosure, over four thousand veterans and other affected individuals filed administrative claims with the Navy seeking compensation for their injuries.

13. Several injured servicemembers and others whose administrative claims were denied brought suits against the United States in various federal district courts under the FTCA. *See* 28 U.S.C. §§ 1346(b), 2671–2680.

14. In 2011, the Camp Lejeune cases were consolidated in a Multi-District Litigation ("MDL") in the Northern District of Georgia (*See* MDL No. 2218).

15. On December 15, 2016, the District Court dismissed the claims based on North Carolina's statute of repose without reaching the merits of the plaintiffs' negligence and duty-to-warn claims. *See In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318 (N.D. Ga. 2016). The United States Court of Appeal for the Eleventh Circuit affirmed the District Court's decision. *See In re Camp Lejeune, N.C. Water Contamination Litig.*, 774 F. App'x 564 (11th Cir. 2019).

16. In the wake of the District Court's decision, the Navy elected to deny the thousands of pending claims seeking compensation for harms caused by the government's failure to ensure safe water at Camp Lejeune.

17. On August 10, 2022, the President signed into law the Camp Lejeune Justice Act of 2022. The purpose of the legislation is to, *inter alia*, supersede the judicial rulings that barred recovery under the FTCA for individuals injured by the contaminated water at Camp Lejeune.

18. Section 804(b) of the Act establishes a new federal cause of action specifically for those affected by the extensive contamination at Camp Lejeune. It provides that:

> an individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

19. The Act "appl[ies] only to a claim arising before the date of enactment of this [PACT] Act." The statute expressly incorporates the FTCA's requirement that a claim must be presented to the relevant federal agency before the judicial action may proceed. *See* § 804(h) of the Act (cross-referencing 28 U.S.C. § 2675). Under that provision, if the federal agency fails to make a final disposition of a claim within six months of its filing, the claim is "deemed" denied, allowing the claimant to file an action in court. 28 U.S.C. § 2675(a).

20. The Act makes clear that a plaintiff may obtain a recovery for a "latent disease." *See* § 804(e)(1).

21. To meet the burden of proof under the Act, a plaintiff must only "produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is—(A) sufficient to conclude that a causal relationship exists; or (B) sufficient to conclude that a causal relationship is at least as likely as not." *See* § 804(c)(2).

22. The Act includes its own statute of limitations and expressly makes inapplicable any other statute of repose or statute of limitations. *See* § 804(j). The Act's statute of limitations provides that "[a] claim in an action under this section may not be commenced after the later of - (A) the date that is 2 years after the date of enactment of this Act; or (B) the date that is 180 days after the date on which the claim is denied under section 2675 of title 28, United States Code." *Id*.

## FACTS OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT

23. Plaintiff resided, worked or was otherwise exposed for not less than thirty (30) days between August 1, 1953, and December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States.

24. During this time, Plaintiff was exposed to amounts of water supplied by Defendant or its agents at Camp Lejeune. The water supplied to Plaintiff by or on behalf of Defendant was polluted and contaminated as described herein with chemicals including but not limited to trichloroethylene ("TCE"), perchloroethylene ("PCE"), vinyl chloride, and benzene.

25. Subsequently, Plaintiff has suffered harm including, but not limited to, diagnosis with serious illnesses, defects and other maladies, on a date before the enactment of the Act.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this class action pursuant to Rules 23(b)(2), 23(b)(3), and/or 23(c)(4) of the Federal Rules of Civil Procedure on behalf of Plaintiff and all members of the following Class:

> All natural persons, including any person claiming by, or the legal representative of such an individual, who resided, worked, or were otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina who (i) have filed a claim in the administrative process which has been denied or whose claims have not been acted on within 6 months of presentation, (ii) are not represented by counsel in connection with their claim for compensation for exposure to the water at Camp Lejeune(other than in connection with serving as a named plaintiff in this class action), and (iii) have not filed a lawsuit under the Act as of the date class certification is granted.

27. The purposes of this class complaint are the following:

6

a. to protect the statutory rights, opportunities, and benefits accorded to Camp Lejeune servicemembers, families, and employees under the Act, by preserving the timeliness of their claims under the Act, and ensuring to all of them the benefit of counsel under the supervision of the Court and the provisions of Rule 23;

b. to provide procedural and case management tools and alternatives for the Court's selection, including the identification and prioritization of important common issues for unitary or exemplar determination, in order to advance Fed. R. Civ. P. 1's goal in this litigation: "the just, speedy, and inexpensive determination" of the claims of the Class members; and

c. to refine and develop, subject to additional information obtained through further investigation and discovery as the litigation unfolds, the foregoing definition or scope of the Class, by amendment of this complaint or by a motion for class certification. For example, on motion or sua sponte, the Court may in its discretion designate additional classes, designate subclasses under Rule 23(c)(5), take action under Rule 23(d) for the protection of Class members and the fair and efficient conduct of the action, and appoint additional class representatives and counsel.

28. Specifically excluded from the proposed Class is Defendant and any federal government official or employee responsible for administering claims for compensation arising out of exposure to the water at Camp Lejeune or representing the government in judicial proceedings related to such exposure. Also excluded from the proposed Class is the Court, the Court's immediate family and court staff. Finally, all persons who properly execute and timely file a request for exclusion from the Class, if the opportunity is provided to opt out of the Class, are excluded from the class.

### **FED. R. CIV. P. 23(A) AND 23(B)(3)**

29. Plaintiff brings this action pursuant to the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure as a Class action on [his/her] own behalf and on

7

Case 7:22-cv-00145-M-KS   Document 1   Filed 08/14/22   Page 7 of 12

behalf of other persons similarly situated. This action satisfies the numerosity, commonality, typicality, predominance, and superiority requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

## NUMEROSITY

30. Although the exact number of Class Members is uncertain at this time and can be ascertained only through appropriate discovery, the Members of the Class are so numerous, numbering in at least the thousands, that separate joinder of each member is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and the Court.

31. Putative Class Members are readily identifiable, for notice and case management purposes, through publicly available records.

## TYPICALITY

32. Plaintiff is a member of the Class with respect to exposure to water at Camp Lejeune as specified in the Class definition, and Plaintiff's claims are typical of and essentially coextensive with the claims to be advanced by Members of the Class, in that the facts and circumstances giving rise to liability are the same, the claims arise under and will be governed by the provisions of the same Act, and the damages suffered by the Plaintiff are the same kinds of damages suffered by the Members of the Classes.

## ADEQUATE REPRESENTATION

33. Plaintiff will fairly and adequately represent and protect the interests of the Class, because, as between Plaintiff and the Class, their interests do not conflict; their interests are co-extensive, with common rights of recovery based on the same essential facts and legal theories; their injuries arise from the same type of exposure, at the same location, resulting from the acts and omissions of the same entities; and are seeking the same statutory remedies available under

8

Case 7:22-cv-00145-M-KS   Document 1   Filed 08/14/22   Page 8 of 12

the Act. Plaintiff is aware of the role and duties of a class representative and intends to prosecute this action vigorously, through counsel, for the benefit of all those similarly situated.

34. Plaintiff has retained counsel who are both competent and experienced in complex Class action and toxic tort litigation, including environmental and toxic exposure actions like this one and who are intimately familiar with the provisions of the Act, because they were active and tenacious participants in the years-long campaign to draft, develop, introduce it, and spearhead its progress and passage through Congress and its ultimate enactment into law. They are intimately aware of, and steadfastly dedicated to, the animating purpose and essential goal of the Act: to remember, to honor, and to include all exposed to toxic contamination at Camp Lejeune in the course of service to their country; to ensure that none are forgotten or left out of this litigation; and that all with injuries are compensated under the Act.

## **PREDOMINANCE OF COMMON QUESTIONS**

35. With respect to issues and claims raised herein, questions of law and fact common to Class Members predominate over any questions affecting only individual members of the Class. There are questions of law or fact common to the Class, including, but not limited to:

   a. The history of Defendant's dumping of chemicals on the Camp Lejeune military base over a 30-year period;
   b. The effects of the contamination on individuals exposed to the chemicals in the water at Camp Lejeune during that time period; and,
   c. The research and extensive studies as to the levels of toxic contaminants found in the water supply and the related diseases/conditions as a result of exposure.

## SUPERIORITY

36. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37. Absent a Class action, most Class Members would likely find the cost of litigating their claims to be prohibitively high and, therefore, would not have an effective remedy at law. Further, there is no interest by Class Members in individually controlling the prosecution of individual cases.

38. Class treatment of common questions of law and fact will conserve the resources of the courts and litigants and will promote consistency and efficiency of adjudication. Whatever difficulties may exist in the management of a Class action will be greatly outweighed by its benefits.

## FED. R. CIV. P. 23(A) AND 23(B)(2) INJUNCTIVE OR DECLARATORY RELIEF

39. In addition to the above, Plaintiff brings this Class action under Fed. R. Civ. P. 23(a) and 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Classes, such that final injunctive relief or declaratory relief is appropriate with respect to each Class as a whole. Such injunctive relief includes, but is not limited to, an Order or injunction requiring Defendant to fund a medical monitoring program sufficient to monitor the deleterious effects and potentially-deleterious effects of toxic chemicals on the human body and to detect these effects to the extent possible.

## FED. R. CIV. P. 23(A) AND 23(C)(4) CERTIFICATION OF PARTICULAR ISSUES

40. In the alternative to certification under Fed. R. Civ. P. 23(b)(2) or 23(b)(3), Plaintiffs and Members of the Classes seek to maintain a Class action with respect to particular issues under Fed. R. Civ. P. 23(a) and 23(c)(4).

41. Particular common questions of law and fact relating to the liability of Defendant for the damages caused to Plaintiffs and Class Members are appropriate for issue certification

and common adjudication under Fed. R. Civ. P. 23(c)(4), preserving other issues for individualized treatment.

## FIRST CAUSE OF ACTION
### Relief under the Camp Lejeune Justice Act of 2022

42. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

43. Plaintiffs resided, worked or was otherwise exposed for not less than thirty (30) days between August 1, 1953, and December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States.

44. During this time, Plaintiffs were exposed to amounts of water supplied by Defendant or its agents at Camp Lejeune. The water supplied to Plaintiffs by or on behalf of Defendant was polluted and contaminated as described herein with chemicals including but not limited to TCE, PCE, vinyl chloride and benzene.

45. Subsequently, Plaintiffs suffered harm including, but not limited to, diagnosis with serious illnesses, defects and other maladies, on a date before the enactment of the Act.

46. A causal relationship exists between each of Plaintiffs' illnesses, conditions and other maladies and the contaminants Plaintiffs were exposed to in the Camp Lejeune water supply. The causal relationship is at least as likely as not.

### CLAIM FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that:

1. That this case be certified as a Class action as proposed and for the purposes described in the Class Action Allegation section of this Complaint, pursuant to the appropriate provisions of Rule 23 of the Federal Rules of Civil Procedure;

2. Pursuant to Section 804 of the Act, the Court enter judgment against the United States and award damages and all other appropriate relief for the harm to Plaintiffs; and

3. Grant Plaintiffs such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 804 of the Act, including such triable issues as may be certified, severed, and/or consolidated for trial under Rules 23 or 42 of the Federal Rules of Civil Procedure.

August 14, 2022,                                        Respectfully submitted,

*/s/ Eric W. Flynn*
Eric W. Flynn (N.C. Bar No.: 57615)
J. Edward Bell, III (to make special appearance)
BELL LEGAL GROUP, LLC
219 Ridge Street
Georgetown, SC 29440
eflynn@belllegalgroup.com
jeb@belllegalgroup.com
Phone (843) 546-2408
Fax (843) 546-9604
*Counsel for Plaintiffs*

*/s/ Robert Jackson*
Robert Jackson, Esq. (to make special appearance)
ROBERT B. JACKSON, IV, LLC
260 Peachtree Street - Suite 2200
Atlanta, Georgia 30303
rbj4law@gmail.com
Phone (404) 313-2039
*Counsel for Plaintiffs*

*/s/ Zina Bash*
Zina Bash (to file special appearance)
Keller Postman LLC
111 Congress Avenue
Suite 500
Austin, TX 78701
956-345-9462
zina.bash@kellerpostman.com
*Counsel for Plaintiffs*

*/s/ Aimee Wagstaff*
Aimee Wagstaff (to file special appearance)
WAGSTAFF LAW FIRM
940 Lincoln Street
Denver, CO 80203
Phone 303-376-6360
awagstaff@wagstafflawfirm.com
*Counsel for Plaintiffs*

*/s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser (to file special appearance)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
ecabraser@lchb.com
Phone: (415) 956-1000
Fax: (415) 956-1008
*Counsel for Plaintiffs*

*/s/ John F. Bash*
John. F. Bash (to file special appearance)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 W. 6th St.
Austin, TX 78701
Phone (737) 667-6100
Fax (737) 667-6110
johnbash@quinnemanuel.com
*Counsel for Plaintiffs*